**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | |
|---|---|
| **COURTLAND REALTY ASSOCIATES,** ) | |
| *Plaintiff,* ) | |
| ) | **CASE NO. 6:13-CV-00022** |
| **v.** ) | |
| ) | **MEMORANDUM OPINION** |
| **GRAY S. NASH, ET AL.,** ) | |
| *Defendants.* ) | |

Plaintiff Courtland Realty Associates ("Plaintiff") filed this action against the Nash Defendants and the United States of America, seeking a declaratory judgment to quiet title to a 100.6 parcel of real estate located in Appomattox County, Virginia. The Nash Defendants filed a motion to dismiss on March 29, 2013. In a July 9, 2013 order, I denied that motion to dismiss, finding that questions about ownership of the property remained.

A one-day bench trial took place on November 13, 2013. At trial, Plaintiff and the Nash Defendants contested three major issues: (1) whether this Court had jurisdiction to determine the rights of the parties; (2) whether Plaintiff had conveyed its interest in the 100.6 acres in dispute during the sale following the 1970 partition suit; and (3) whether Plaintiff, in the alternative, had come to own the parcel in question through adverse possession. The United States of America did not, until filing their post-trial brief, assert a claim to the 100.6 acres in dispute, but rather sought a determination of the rights of the parties so as to insure a cloud of title did not arise over a separate, but related, conveyance of 179.82 acres. As explained in the findings of fact and conclusions of law set forth below, I find that Plaintiff did not convey its interest and therefore is the sole owner of the 100.6 acres in dispute, and that the United States of America has good title to its 179.82 acre parcel.

**I. BACKGROUND**

[1]

The underlying dispute at the heart of this case arises out of land transfers dating back to the 1920s, and the present action has a complicated procedural history.  In 1918, S.L. Ferguson acquired a parcel of land estimated to contain 925 acres in Appomattox County.  In 1921, Ferguson conveyed an undivided one-half interest in the parcel to H.D. Flood.  When H.D. Flood died intestate in 1921, his interest in the parcel passed to Bolling Byrd Flood ("Flood") and Eleanor Faulconer Flood Schoellkopf ("Schoellkopf") as his sole heirs at law.  When S.L. Ferguson died, he devised all of his property, including his remaining one-half interest in the 925-acre parcel, to his wife, Adelia Ferguson, who died in 1956.  The executors of her estate conveyed the Fergusons' interest in the original parcel to Courtland Realty Company, Inc.  Thus, by October 1969, Flood and Schoellkopf jointly owned a one-half undivided interest in the original parcel, and Courtland Realty Company, Inc. owned the other one-half undivided interest in the parcel, less any off conveyances.

On October 31, 1969, Flood and Schoellkopf filed suit in Appomattox Circuit Court to partition certain real estate, including a tract estimated to contain 416.12 acres, being the residue of the original 925-acre tract.  The court appointed Special Commissioners to auction off the 416.12 acres.  David S. Nash successfully bid on the portion of the 416.12 acres described as lying on the southeasterly side of U.S. Route 24 (the "Southeasterly Parcel").  By a deed dated November 2, 1970, the Special Commissioners conveyed to David and Marion Nash title to a parcel of real estate described as:

> That certain tract or parcel of land, together with the privileges and appurtenances thereunto belonging, situate, lying, and being in Cloverhill Magisterial District of Appomattox County, Virginia, estimated to contain 140 acres, but this being a conveyance in gross and not by the acre, and being that part of a tract of land containing 416 acres, more or less, which lies on the southeasterly side of U.S. Highway No. 24, but having no frontage on said U.S. Highway No. 24.

At the auction, Courtland Realty Company, Inc. successfully bid on the portion described as lying on the northwesterly side of Route 24 (the "Northwesterly Parcel").  By a deed dated November 2, 1970, the Special Commissioners, at the direction of Courtland Realty Company, Inc., conveyed to Burruss Land and Lumber Company, Inc., title to a parcel of real estate described as:

> That certain tract or parcel of land, together with the buildings and improvements thereon and the privileges and appurtenances thereunto belonging, situate, lying and being in Cloverhill Magisterial District of Appomattox County, Virginia, estimated to contain 275 acres, but this being a conveyance in gross and not by the acre, having a frontage of approximately 4,700 feet on the northwesterly line of U.S. Route No. 24, and extending back to the Appomattox River, and being all that part of a tract of land containing 416 acres, more or less, which lies on the northwesterly side of U.S. Route No. 24.

In 1994, David and Marion Nash conveyed by deed of gift to Gray Nash, Jeann Nash Amos, and James G. Amos (Jeann's husband) the one-half undivided interest in the remaining 71 acres of the Southeasterly Parcel that David and Marion had received in the 1970 deed from the Special Commissioners.  The Northwesterly Parcel also went through changes in ownership. After the recording of the 1970 deed, Burruss Land and Lumber Company, Inc. was merged into Boston/Lyme Timber Company, Inc. (a Delaware corporation), which changed its name to Burruss Timber Company, Inc. (also a Delaware corporation).  Burruss Timber Company, Inc. conveyed the property by deed to Burruss Timber Associates (a Virginia limited partnership), which subsequently changed its name to Burruss Timber Associates, L.P.  By a deed dated September 14, 1993, Burruss Timber Associates, L.P., after several off conveyances, conveyed the residue of the Northwesterly Parcel to the United States.

In August 2005, Courtland filed two complaints against the Nash Defendants in Appomattox County Circuit Court seeking to quiet title to a 100.6 acre parcel of land. A trial was held on August 4, 2006.  On November 17, 2006, the circuit court issued a letter opinion that

[3]

identified the source of the confusion regarding ownership of the 100.6 acre parcel.  Discussing

the partition of the 416-acre parcel in 1970, the court stated:

> Several facts are undisputed.  First, there is no single "tract of land containing 416 acres, more or less" on either the southeasterly or northwesterly side of U.S. Route No. 24.  Secondly, there is no tract of land estimated to contain 140 acres on the southeasterly side.  There is no tract of land estimated to contain 275 acres on the northwesterly side.  There are three tracts of land—one 215 acre tract on the "northwesterly" [north] side, one 100 acre tract on the "southeasterly" [south] side, and one 100.6 acre tract on the south side.  This total acreage—415.6 acres in three separate parcels—is the "416 acres" referred to as "a tract containing 416 acres" in the two deeds
>
> Thus, the specific description in the Nash deed is problematic.  There are two 100 acre tracts [100 and 100.6] on the south side.  The deed states the land conveyed is a "certain tract or parcel" which is part of a tract containing 416 acres on the south side.  It is not clear whether one or two tracts are being conveyed because there is no tract matching the description.  The description states the "part" and "a tract containing 416 acres" are on the south side.  However, there are two "parts" on the south side and there are three tracts of land "containing 416 acres."
>
> Moreover, the description in the Burruss deed (a "275" acre tract "being all that part of a tract of land containing 416 acres, more or less, which lies on the northwesterly side of U.S. Route No. 24) is not clear.  Either the entire 416 acres is on the north side, or a "part" is on the north side.  Thus the conveyance of "275 acres may be either "all" of whatever "part" of the 416 tract is physically located on the north side, or "all that part" of a 416 acre tract, with all 416 acres located on that side, or some other conveyance.

The court found that the key question was "whether the conveyance included a separate 100.6

acre tract," and held that it did.  The court also held that Courtland did not meet its burden of

establishing adverse possession to the 100.6 acre tract by clear and convincing evidence.

Accordingly, the court ordered that the land belonged to the Nash Defendants and to Burruss

Land and Lumber Company, Inc., or its corporate successor, if any, as tenants-in-common in

undivided shares.

Courtland appealed the Circuit Court's decision to the Supreme Court of Virginia.  After

considering the record, the briefs, and argument of counsel, the Supreme Court of Virginia

[4]

dismissed the appeal without prejudice and vacated the Circuit Court's order.  The Court found that the Circuit Court's order imposed certain duties and obligations upon Burruss Land and Lumber Company, Inc., which was not a party to the case.  The court held "that the circuit court lacked the power to grant the relief Nash prayed for because Burruss was a necessary party to the cross-bill."  The Virginia Supreme Court remanded the case to the Circuit Court to join Burruss Land and Lumber Company, Inc. as a party in any further proceedings.  Upon remand, the Circuit Court first issued an order finding that The Lyme Timber Company may be Burruss's successor in interest and ordering service upon The Lyme Timber Company.  Courtland then moved for leave to file amended complaints alleging the United States was the assignee of Burruss Timber Associates.

With the Circuit Court's permission, Courtland filed amended complaints in state court naming the United States as a defendant.  The United States removed to this Court because under 28 U.S.C. § 1346(f), federal district courts have exclusive original jurisdiction over claims against the United States to quiet title.  Since § 1346(f) grants federal district courts exclusive original jurisdiction, the state court lacked jurisdiction to hear the quiet title actions that included the United States as a defendant.  And since a federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court's jurisdiction, this Court therefore lacked jurisdiction to hear the removed quiet title action.  Accordingly, on February 8, 2013, I dismissed the removed state court action for lack of jurisdiction and granted Courtland leave to file its complaint in this Court under the Quiet Title Act.  Courtland then filed this action pursuant to 28 U.S.C. § 2409a, which provides that the "United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."

On March 29, 2013, the Nash Defendants filed a motion to dismiss. A hearing was held on that motion on July 3, 2013, and on July 9, 2013, I issued an order denying the motion. Eventually, a one day bench trial was held on November 13, 2013.

## II. DISCUSSION

Federal Rule of Civil Procedure 52(a)(1) provides that "[i]n an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately. The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."

### A.  Findings of Fact

On October 1, 2013, the parties filed an uncontested motion in limine (docket no. 19) asking this Court to take judicial notice of the adjudicative facts contained in the record of two suits filed in the Circuit Court of Appomattox County, Virginia, styled *Courtland Realty Associates v. Gray S. Nash, et als.*, cases #CH05-000058-00 and #CH05-000059-00. On October 30, 2013, I issued an order granting the motion in limine (docket no. 30), taking judicial notice of the facts contained in the transcript of the proceedings, the exhibits introduced during the proceedings, and the pleadings, motions, and orders filed. Notably, while I took judicial notice of the facts contained in the record, I do not given any deference to any findings of fact in the vacated circuit court opinion. In addition to the facts described above, these facts of which I took judicial notice constituted the entirety of the evidence presented at the bench trial held on November 13, 2013. While this means all the pertinent facts have already been agreed upon, I nevertheless make the following findings of fact.

1.  On March 12, 1918, S. L. Ferguson properly acquired, by valid deed, approximately 925 acres in Appomattox County.

[6]

2. On February 25, 1921, S L Ferguson validly deeded an undivided one-half interest in the said 925 acres to H. D. Flood.

3. On December 23, 1921, H.D. Flood died intestate and all of his property passed pursuant to the Virginia laws of intestacy to his sole legal heirs, Bolling B. Flood and Eleanor Flood Schoellkopf less any off conveyances.

4. S.L. Ferguson died testate and devised all his property to his wife, Adelia Ferguson.

5. On February 11, 1956, Adelia Ferguson died testate, and by deed dated May 11, 1968, her executors conveyed all of her real estate to Courtland Realty Company, Inc. (predecessor to Courtland Realty Associates).

6. On October 31, 1969, Bolling B. Flood and Eleanor Flood Schoellkopf filed suit against Courtland Realty Company, Inc., asking the court to partition approximately 416.12 acres being the residue of the estimated 925 acres.

7. On April 28, 1970, a Special Commissioner's Hearing was held. At the hearing, Robert D. Richards, the title examiner for the property, testified that Parcel I was listed on the Appomattox County land Book as a 416 acre parcel. Richards also noted, however, that the acreage was not necessarily correct.

8. Also at the Special Commissioner's Hearing, John Smith, the forestry expert, testified that 2/3 of the area in Parcel I lay to the north of Route 24 and approximately 1/3 lay to the south of Route 24.

9. On July 31, 1970, the Appomattox County Circuit Court entered a decree appointing special commissioners to partition and sell the estimated 416.12 acres owned by Bolling B. Flood and Eleanor Flood Schoellkopf at public auction, which estimated 416.12 acres

consisted of two parcels, one containing an estimated 140 acres and the other an estimated 275 acres.

10. The Legal Notice of the sale in the newspaper described Parcel I as being located adjacent to the Surrender Grounds on Route 24 and adjacent to the Parkway Restaurant.

11. The Report of Special Commissioners stated that the commissioners placed large painted signs on the property to be sold advertising the sale. Catherine Godsey testified at the August 4, 2006 trial that she never saw such signs on the 100.6 acre parcel in dispute. I find that there were never any for sale signs on that parcel.

12. On September 11, 1970, a public auction was held pursuant to the Court's July 31, 1970 decree. David S. Nash and Marion D. Nash were the high bidders on the estimated 140 acre parcel located on the southeast side of U.S. Route 24 with no frontage on Route 24, but which, after a later survey, was found to contain only 100.8 acres. This conveyance was recorded at Deed Book 101, Page 29, in the land records of the Appomattox County Circuit Court. The Appomattox County Circuit Court entered a decree approving and ratifying the sale to the Nashes.

13. Also on September 11, 1970, a public auction was held pursuant to the Court's July 31 decree where Courtland Realty Company, Inc. was the successful bidder on the estimated 275 acre parcel described as lying on the northwest side of U.S. Route 24. The Appomattox County Circuit Court entered a decree approving and ratifying the sale to Courtland Realty Company, Inc.

14. The Decree Confirming the Sales described the parcel sold to the Nashes as being located about one mile east of the Town of Appomattox, Virginia.

[8]

15. On November 2, 1970, at the direction of Courtland Realty Company, Inc., the special commissioners conveyed by deed, duly recorded in the land records of the Appomattox County Circuit Court, at Book 101, Page 500, what is stated in the deed as an estimated 275 acres to Burruss Land and Lumber Company, Inc., but which after later survey was found to contain only 215 acres.

16. On September 14, 1993, Burruss Timber Associates, L.P., the successor in interest to Burruss Land and Lumber Company, Inc., conveyed title to a 179.82 acre tract now known as Tract 01-117 within the Appomattox Court House National Historical Park to the United States of America, the same being the residue of the land conveyed to Burruss Land and Lumber Company, Inc. by the November 2, 1970 deed. This conveyance was duly recorded in Deed Book 206, Page 367, in the land records of the Appomattox County Circuit Court.

17. In August 2005, Courtland filed two complaints against the Nash Defendants in Appomattox County Circuit Court seeking to quiet title to a 100.6 acre parcel of land. A trial was held on August 4, 2006.

18. At the trial, David S. Nash testified that there were two tracts of land at sale, and that he bought the one south of Route 24. He testified to having walked the boundaries of that property at the time of sale.

19. Nash further testified that he was unaware of any land on State Route 627 and had never gone on any land in that location.

20. Nash also testified that he was disappointed the property he bought was 100.8 acres instead of 140 acres, and he "never knew why" he was shorted 40 acres.

21. The northwest boundary of the 100.6 acre parcel under dispute borders Tract 01-101 in

the National Park, and its southwest boundary borders State Route 627.

**B.  Conclusions of Law**

<u>1. Legal Issues Decided Prior to Trial</u>

*a. The Status of the Appomattox County Circuit Court judgment*

In my July 9, 2013 order denying the motion to dismiss filed by the Nash Defendants, I

noted that the Appomattox County Circuit Court judgment which the Nash Defendants rely upon

was vacated. I noted that "[i]t is axiomatic that 'where a court, in the discharge of its judicial

functions, vacates an order previously entered, the legal status is the same as if the order had

never existed.'" *Abo State v. Gonzales*, 215 F. App'x 134, 137 (3d Cir. 2007) (quoting *Mitchell*

*v. Joseph*, 117 F.2d 253, 255 (7th Cir. 1941)). I further pointed out that since the state trial

court's judgment was vacated by the Supreme Court of Virginia, there is no extant judgment

resolving the parties' rights to the contested property, and those rights therefore remain to be

determined. I will accordingly disregard the argument of the Nash Defendants that because "the

state court has already fully adjudicated the case at trial," this court should decline to hear the

case. Def.'s First Trial Br. 5 (docket no. 44). Although the Nash Defendants are right that the

Circuit Court judgment was not reversed, it was nevertheless vacated, and so its decision is not

entitled to deference.

<u>2. Legal Issues Resolved by the Trial</u>

*a. Jurisdictional Basis*

The basis for jurisdiction in this case is 28 U.S.C. § 2409a, commonly known as the

Quiet Title Act. The act provides that the "United States may be named as a party defendant in a

civil action under this section to adjudicate a disputed title to real property in which the United

States claims an interest, other than a security interest or water rights." The Nash Defendants asserts and neither Plaintiff nor the United States disagrees, that the 1993 deed conveying 179.82 acres by Burruss Timber Company to the United States clearly refers to a parcel of land other than the 100.6 acres under dispute in this case. Def.'s First Trial Br. 2 (docket no. 44); *see also* Proposed Findings of Fact and Conclusions of Law by the United States of America 4 (docket no. 32) ("As a matter of law, the court's decision regarding the 100.6 acre parcel at issue in this suit has no legal effect on the United States' title to its 179.82 acre tract identified as Tract 01-117 in the National Park."). The Nash Defendants further note that the United States did not claim an interest in this case beyond ownership of the 179.82 tract.

The Nash Defendants therefore assert that "the basis for the original jurisdiction of this Court is ended, and the sole basis for subject matter jurisdiction exists pursuant to 28 U.S.C. § 1367." Def.'s First Trial Br. 4 (docket no. 44). I disagree. As the United States notes, "[t]his is an unusual case under 28 U.S.C. § 2409a in that the Plaintiff does make a direct claim against the United States' title to its [179.82 acre tract]….[instead], how the Court construes the two special commissioners' deeds dated November 2, 1970 . . . may create a cloud on the title of Burruss Land and Lumber which may, in turn, create cloud on the United States' title. Integrated Pretrial Order 3-4 (docket no. 34). During the trial, counsel for the United States stated that it was the government's position that the court *should* determine the rights of the parties in this case, in order to insure that no cloud exists on the United States's title.

I note that 28 U.S.C. §2409a(e), which mandates that the jurisdiction of the district court to cease  [i]f the United States disclaims all interest in the real property" and the "disclaimer is confirmed by order of the court," seems to govern the scenario the Nash Defendants are envisioning. But only by "filing such a disclaimer with the court" can the "United States disclaim

[11]

any interest in property" and thereby "eliminate the United States's claim of interest in property and thus deprive the district court of jurisdiction under the QTA." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1200-1201 (9th Cir. 2008); *see also Alaska v. United States*, 546 U.S. 413, 415 (2006) (demonstrating what is required to invoke disclaimer by stating "[i]n accordance with 28 U.S.C. § 2409a(e), the following [specific] disclaimer of the United States is confirmed"). Here, although the United States did not claim any ownership of the 100.6 acres under dispute throughout the bulk of the litigation, it nevertheless has not disclaimed interest in the case. It has, in fact, affirmatively requested the court determine the rights of the parties so as to prevent a cloud of title from arising on the 179.82 acre tract.

The Quiet Title Act "is a limited waiver of the sovereign immunity of the United States." *Richmond, F. & P. R. R. v. United States,* 945 F.2d 765, 769 (4th Cir. 1991). In normal cases where a direct claim is asserted against the United States, "[t]he waiver in § 2409a must be construed narrowly in favor of the government." *Bay Sav. Bank, F.S.B. v. IRS*, 837 F.Supp. 150, 153 (E.D. Va. 1993) (quoting *RF&P*, 945 F.2d at 769). In other words, there is a preference for construing the statute in a way favorable to government interests. In a case like this, where the United States actively seeks to have the litigation move forward, it makes little sense to find disclaimer or any other relinquishment of jurisdiction applicable.

I further note, as Plaintiff and the United States have pointed out, that case law in this Circuit suggests that jurisdiction under the Quiet Title Act is broad ranging. *See, e.g., Richmond, F. & P. R. R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991) (finding that "[t]he interest claimed need not amount to full legal title in the United States. As long as the interest claimed is a 'cloud on title,' or a reasonable claim with a substantial basis, it constitutes a 'claim'"); *Love v. United States*, 889 F. Supp. 1548, (E.D. N.C. 1994) (noting that "§ 1346(f) and 2409(a) provide a

[12]

broad basis for jurisdiction"). I therefore determine that jurisdiction under 28 U.S.C. § 2409a is retained.[1]

Even if the Nash Defendants were correct that no jurisdiction exists under 28 U.S.C. § 2409a, I disagree with the Nash Defendants that this is "exactly the kind of situation where this Court . . . [ought] to decline to exercise supplemental jurisdiction." Def.'s First Trial Br. 5 (docket no. 44). The Nash Defendants do correctly note that 28 U.S.C. § 1367(c) states, in pertinent part:

> "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there aer other compelling reasons for declining jurisdiction."

The Nash Defendants further correctly note that "the doctrine of pendent jurisdiction is . . . a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988). Some of those concerns include "the principles of economy, convenience, fairness, and comity." *Id*. at 357; *see also Hinson v. Norwest Fin. S.C., Inc.,* 239 F.3d 611, 616 (4th Cir. 2001) (finding that "[e]ven though *Carnegie-Mellon* was decided before the doctrine of pendent jurisdiction was codified in 28 U.S.C. § 1367, we nevertheless conclude that it continues to inform the proper interpretation of § 1367(c).")."

---

[1] I note that the United States claims in their post-trial brief to have changed their position on ownership of the 100.6 acre parcel, now suggesting "that the government potentially has, and therefore, claims an undivided one-half interest in the 100.6 acres based largely on its 1993 deed." United States's Post-Trial Br. 6 (docket no. 51). This claim is yet another reason for the Court to retain jurisdiction.

Here, the Nash Defendants argue that the state law claim substantially predominates over the federal claim. But I agree with the United States that, although this is an unusual application of 28 U.S.C. § 2409a, the confusion surrounding the chain of title is significant enough that the United States has a strong interest in the Court's construction of the 1970 Special Commissioner deeds. Determining who has title to the 100.6 acre parcel requires analyzing those deeds, one of which forms the basis for the United States's interest in this case. Thus, rather than a situation where the state claim predominates over the federal claim, this is a situation where those claims are intertwined.

Furthermore, principles of economy, convenience, and fairness strongly counsel in favor of this court retaining jurisdiction and resolving, finally, the rights of these parties. The controlling deeds in this case were conveyed by the Special Commissioners in November 1970, a full forty three years ago. The present litigation began in 2005, a full eight years ago. The case has already required a trial in Appomattox Circuit Court, a review by the Virginia Supreme Court, and on November 13, 2013, a full day trial before this Court. The trial before this Court was the first time all necessary parties had been joined to the action, and now that they have all been present during a trial, judgment ought to be reached. A final decision strongly serves judicial economy by preventing further relitigation, and also supports convenience and fairness regarding the parties, in that a final resolution will allow title to finally be determined and allow the parties to proceed with the knowledge of what they do, and do not, own.

Thus, I determine that this court retains jurisdiction under 28 U.S.C. § 2409a. Even if the jurisdictional basis was solely based on supplemental jurisdiction under 28 U.S.C. § 1367, however, I find that there are numerous reasons to continue exercising jurisdiction over the case.

*b. The 1970 Special Commissioner's Deeds*

[14]

Having determined that the court possesses the jurisdiction to determine the rights of the parties in this case, I now turn to the question of what the 1970 Special Commissioner's deeds actually conveyed to the parties.

As both parties acknowledge, the primary guiding principle for interpreting a deed is to ascertain the intention of the parties. *See, e.g., Poindexter v. Molton*, 237 Va. 448, 450 (1989) (stating that "[i]t is well established that the primary consideration in construing deeds is to determine the intention of the parties executing the instrument"); *Providence Properties, Inc. v. United Virginia Bank/Seaboard Nat'l, Trustee,* 219 Va. 735, 744 (1979) (noting that "[i]n construing a deed, the intention of the grantor must be ascertained from the entire instrument"). Courts should rely on the language used and the general purpose and scope of the instrument in order to ascertain purpose, giving to words their natural and ordinary meaning. *Arbern Realty Co. v. Swicegood*, 201 Va. 30, 33-34 (1959).

Here, an examination of the plain language of the deeds in question is telling. The Special Commissioners deed to the Nashes states that a "certain tract" "estimated to contain 140 acres" and being "a conveyance in gross and not by the acre" is conveyed, with the land being described as lying "on the southeasterly side of U.S. Highway No. 24, but having no frontage on said U.S. Highway No. 24." Joint Trial Ex. 26. The Special Commissioners deed, ultimately to the Burruss Land and Lumber Company, Inc., reads identically, except it describes the northwesterly parcel instead. Joint Trial Ex. 30. On the face of the deeds, then, it is contemplated that one parcel will be sold to each buyer. The deeds make clear that the acreage is an estimation rather than a guarantee. They further state that the conveyance is in gross rather than by the acre, meaning the conveyance was specifically intended to convey a particular land mass rather than a particular number of acres. This tracks with Virginia law, which states that "quantity [is considered] to be

[15]

the least reliable method of describing land. Therefore, a description by acreage is inferior to all other deed descriptions." *Providence Properties*, 219 Va. at 744-745. Notably, the Nash Defendants do not contest this point, admitting that "the description by location . . . is a more favored description than a mere reference to acreage." Def.'s Second Trial Br. 8 (docket no. 45).

Thus, it appears from the face of the deeds that the buyers fully intended to receive one parcel each, with Burruss intending to receive a parcel north of Route 24 and the Nash Defendants intending to receive a parcel south of Route 24. Neither party intended to receive one parcel plus a percentage of a third parcel, neither party contemplated receiving an interest in a parcel near State Route 627, and all parties intended, based on the language of the deeds, to focus on the specific land mass they were buying rather than counting up the acreage. It appears, then, clear on the face of the deeds that the conveyance to Burruss was simply of the parcel which ended up being 215 acres, and the conveyance to the Nashes was simply of the parcel which ended up being 100.8 acres.

It may initially seem unfair for "[b]oth grantees . . . [to have] been shorted land in the transaction." Def.'s Second Trial Br. 3 (docket no. 45). Indeed, the Nash Defendants emphasize how inequitable this outcome would be throughout their filings, stressing at one point that the buyers did not know of the 100.6 acre parcel, but "*more importantly*, they paid for 416 acres." Def.'s Post-Trial Br. 3 (docket no. 50). But Virginia law is clear on this point. In contracts for sale of land in gross, the parties assume the risk of deficiency or excess in the number of acres. *See Branton v. Jones*, 222 Va. 305, 309 (citing *Cunningham v. Millner,* 82 Va. 526, 530 (1886)); *see also Ampthill Corp. v. Gathright*, 154 Va. 557, 577 (1990) (noting that "it is immaterial whether or not the sellers or the buyer, or both, were mistaken as to the number of acres in the tract").

[16]

Thus, it appears clear that the intention of the grantees was to receive one parcel each. To whatever extent the grantees were surprised to find that they had been shorted acreage, they assumed that risk by participating in a contract for sale of land in gross. The Nash Defendants assert that Plaintiff is precluded as a matter of law from asserting "any claim of right, title, or interest . . . to any amount of land which may have gone missing during the partition suit and sale process" and further asserts that a ruling in favor of Plaintiff would "encourage error, or worse, skullduggery." Def.'s Second Trial Br. 3-4 (docket no. 45). But contrary to these dire warnings, a ruling that the 1970 Commissioner's deeds did not convey to Burruss or the Nash Defendants any interest in the contested 100.6 acres is imminently reasonable. If anything, reading a more than forty year old deed, which plainly conveys only one parcel, as conveying more would be the action that would encourage error, or worse, skullduggery. It is simply implausible that two sales resulted in the sale of two parcels plus a tenancy in common in a third parcel located over two miles away and not described in any of the sale materials. The only argument the Nash Defendants make about an alternative reading of the deeds centers around the amount of acreage to be conveyed, frequently noting that the purpose of the partition suit "was to dispose of the entire 416 acres." Def.'s Post-Trial Br. 4 (docket no. 50). But the Nash Defendants admit that acreage is the least favored way to construe a deed, and there are other telling reasons to suppose that the third parcel was *not* intended to be conveyed. Thus, I find that the 1970 Commissioner's deeds unambiguously convey one parcel each, with neither conveying any interest in the contested 100.6 acre parcel.

As both parties note, the parol evidence rule operates to bar extrinsic evidence from varying or contradicting the plain language of a deed. *See* Pl.'s Trial Br. 9 (docket no. 40) (stating that "the parol evidence rule is alive and well with respect to construing a deed); Def.'s

Second Trial Br. 6 (docket no. 45) ("Normally parol evidence is not permitted to aid a trier of fact in determining what property was intended to be conveyed by any given deed"). The only exception is when a written instrument such as a deed is ambiguous. *See, e.g., Poindexter*, 237 Va. at 451 (noting that when "the deeds and plats as a single instrument renders ambiguous the precise intent of the parties concerning the amount of land covered by partition," and only under that circumstance, "extrinsic and parol evidence" are correctly admitted). Because I find that the deeds unambiguously fail to convey any interest in the 100.6 acres, an examination of parol evidence is unnecessary.

However, I do note that were it proper to construe the deeds as being ambiguous, the extrinsic evidence available strongly weighs in favor of my earlier conclusion that the 1970 Special Commissioner's deed to the Nashes conveyed only the 100.8 acre parcel to the south of U.S. Route 24, and no interest in the 100.6 acre parcel under dispute.

First, the testimony of the interested parties in the case paints a clear picture. Robert D. Richards, the title examiner for the property in question, noted that the acreage listings were not necessarily correct. Joint Trial Ex. 4. The forestry expert John Smith testified that there were two parcels rather than three, with approximately two thirds on the north side of Route 24 (which ultimately ended up being the 215 acres conveyed to Burruss) and approximately one third on the south side of Route 24 (which ultimately ended up being the 100.8 acres conveyed to the Nashes). Joint Trial Ex. 4. Both Richards and Smith's testimony support the conclusion that there were two, and only two, parcels of ambiguous acreage sold, with one ultimately being conveyed to Burruss and another to Nash. Furthermore, David S. Nash himself testified at the Appomattox Circuit Court trial that he didn't have any idea that he would be receiving land near Route 627, and even that he had no idea the 100.6 acre parcel near Route 627 existed before the

[18]

commencement of the present lawsuit. Tr. pp. 71-72. The Nash Defendants argue that "[t]he fact that the Nash Defendants were unaware of this additional acreage has no bearing on their title to the same." Def.'s Second Trial Br. 6 (docket no. 45). But the Nash Defendants cannot credibly argue that it was the intent of the parties to convey a portion of the 100.6 acre parcel under dispute when David S. Nash was completely unaware that that parcel even existed. Instead, Nash's testimony supports the idea that, while he may have been surprised that the parcel he bought ended up being 100.8 acres instead of 140 acres, he was definitively not expecting any land adjacent to Route 627.

Second, the other evidence available also supports the suggestion that the 100.6 acres was not conveyed. The Legal Notice of Sale described Parcel I, which both parties agreed during oral argument was the only relevant parcel listed in the Notice, as being "located adjacent to the Surrender Grounds on Route 24 and adjacent to the Parkway Restaurant." Joint Trial Ex. 7. This clearly describes the two parcels sold rather than the 100.6 acres in dispute. The Decree Confirming the Sales described the parcel sold to the Nashes as being "located about one mile east of the Town of Appomattox, Virginia." Joint Trial Ex. 9. This description also references the parcel Nash owns and not the parcel under dispute. Finally, the Report of the Special Commissioners stated that "they placed large painted signs on the property to be sold advertising the sale." Joint Trial Ex. 8. Catherine Godsey testified that there was never any such signage on the property in dispute. Tr. p. 44. The property to be sold was described, and the property in question was not included in that description, nor was it treated as if it was to be sold as well.

The only rebuttal offered by the Nash Defendants to this overwhelming amount of evidence is to suggest that the "partition suit simply validates and upholds what the 1970 deed purported to convey." Def.'s Second Trial Br. 7 (docket no. 45). As I have explained, I disagree.

[19]

I further disagree with the suggestion that ruling in Plaintiff's favor is the equivalent of applying "technical rules of construction to prevent the intended effect of [the] suit." *Id.* at 5. Instead, both the rules of construction and the extrinsic evidence available clearly point in Plaintiff's favor. I finally note that the Nash Defendants insisted during oral argument that the United States could not have obtained an interest in any land except for the land explicitly described in the 1993, applying a strict rule of construction. Yet the Nash Defendants in the same breath ask this Court to interpret the 1970 Commissioner's deed expansively, giving the greatest estate possible and conveying two conveyances rather than one to the Nash Defendants if there is any doubt or ambiguity. Def.'s Second Trial Br. 6 (docket no. 45) (citing *Goodson v. Capehart*, 232 Va. 232 (1986) and *Carrington v. Goddin*, 54 Va. (13 Gratt.) 587 (1857)). If the deeds are properly considered ambiguous, I decline to interpret the deeds as the Nash Defendants request given that the overwhelming force of the extrinsic evidence weighs in Plaintiff's favor instead.

I have therefore determined that the 1970 conveyance of the estimated 140 acre parcel, located on the southeast side of U.S. Route 24 with no frontage on Route 24, to David S. Nash and Marion D. Nash, recorded at Deed Book 101, Page 29 in the land records of the Appomattox County Circuit Court, conveyed only the 100.8 acres which ultimately comprised that parcel. It did not convey the Route 24 parcel plus some interest in the 100.6 acre parcel in dispute. I have further determined that the 1970 conveyance of the estimated 275 acre parcel, located on the northwest side of Route 24, to Courtland Realty Company Inc. (and ultimately to Burruss Land and Lumber Company Inc.), recorded at Deed Book 101, page 500 in the land records of the Appomattox County Circuit Court, conveyed only the 215 acres which ultimately comprised that parcel. It did not convey the Route 24 parcel plus some interest in the 100.6 acre parcel in

[20]

dispute. In other words, neither deed included the disputed 100.6 acre parcel. As a matter of law, Plaintiff Courtland Realty Associates is the sole and absolute owner of the 100.6 acres in dispute.

Because I conclude that Plaintiff owns the 100.6 acre parcel in dispute, it is unnecessary to address Plaintiff's second argument, which is that Plaintiff would have come to acquire the property through adverse possession. As Plaintiff already owns the 100.6 acres, they need not rely on an adverse possession theory, and this Court need not assess that alternative claim.

### c. The United State's Title to Tract 01-117

The implications for the United States of my determination that the 1970 deeds conveyed only the parcels adjacent to Route 24, and not any interest in the disputed 100.6 acre parcel, are clear. On the one hand, it means that the United States has no interest in the disputed 100.6 acre parcel, because there was no interest in that parcel to be conveyed to the United States by the 1993 deed. On the other hand, it means that Burruss Timber Associates, L.P, as successor in interest to Burruss Land and Lumber Company Inc., properly possessed good title to the entire northwesterly parcel, and could properly convey it to the United States of America. Thus, the 1993 conveyance of the residue of the northwesterly parcel from Burruss Timber Associates, L.P. to the United States of America, recorded at Deed Book 206, page 367 in the land records of the Appomattox County Circuit Court, conveyed lawful, valid, and indefeasible fee simple absolute title to the 179.82 acre tract now known as Tract 01-117, within the Appomattox Court House National Historical Park, to the United States of America. As a matter of law, the United States of America is the sole and absolute owner of the land now referred to as Tract 01-117.

### III. Conclusion

Based on all the evidence presented at trial, I conclude that: (1) Plaintiff Courtland Realty Associates is the sole and absolute owner of the 100.6 acres in dispute; (2) The United States of

[21]

America is the sole and absolute owner of the 179.82 acre tract now known as Tract 01-117. An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this ___25th___ day of November, 2013.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE